IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

LUTHERAN HOSPITAL,             )    CASE NO.  1:24 CV 208

      Plaintiff,            )

v.                            )    JUDGE DONALD C. NUGENT

SEIU, DISTRICT 1199,          )    <u>MEMORANDUM OPINION</u>

      Defendant.        )

This matter is pending before the Court on Plaintiff, Lutheran Hospital's Motion for Summary Judgment to Vacate Arbitration Award, (ECF #18), and Defendant/Counter-claimant, SEIU District, 1199's Motion for Summary Judgment to confirm the arbiration award.  (ECF #17).  Both parties filed Responses in Opposition to their opponent's Motion for Summary Judgment, and each filed a Reply in support of their own Motion.  (ECF # 19, 20, 21, 22).  For the reasons that follow, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant/Counter-claimant's Cross Motion for Summary Judgment is GRANTED.

**PROCEDURAL AND FACTUAL BACKGROUND**

The Collective Bargaining Agreement (CBA) between Lutheran Hospital ("the Hospital") and SEIU, District 1199 ("the Union"), effective May 1, 2020 through April 30, 2023,  gave management the sole right to manage, discipline for just cause, and to establish and enforce reasonable rules of conduct or safety, of efficiency, and order in its operations and on its premises.  (ECF #1-1, PageID 12, CBA, Art. 1, Section 1, PageID 12).  That right is limited by "such restrictions and regulations, governing the exercise of these rights, as are expressly

specified in this Agreement," (*Id.*), or as "expressly abridged by a specific provision of th[e] Agreement." (*Id.* , Section 3, PageID 13).

Article XVI, specifically sets forth an agreed policy on substance abuse prevention. Under Article XVI, Section 1, the parties agree that "in order for the Hospital to ensure the provision of safe, high-quality patient care services and to protect the safety and well being of its patients, employees, and visitors, it is essential that all employees report for and perform their duties free from any trace of drugs or alcohol." (ECF #1-1, PageID 44). Section Two of Article XVI defines "prohibited substances" as including "alcohol, marijuana, cocaine, narcotics, tranquilizers, amphetamines and barbiturates, and their derivatives, and all other similar substances, whether controlled or not controlled, which in any manner alter normal perception, thought functions, behavior or mood." (*Id.*).

Article XVI  specifically permits the Hospital to require a blood and/or urine test "[s]hould the Hospital have reasonable cause to suspect that an employee may have used a prohibited substance prior to reporting for work or while at work, or that an employee's performance or behavior may be affected by his use of one or more prohibited substances." (ECF #1-1, CBA, Art. XVI, Section 3).   If an employee tests positive for a prohibited substance they "will be placed on medical leave of absence and will be required to undergo and successfully complete a recommended rehabilitation program.  (ECF #1-1, PageID 45, CBA Article XVI, Section 3(c).  Once an employee has tested positive and been returned to active employment, they "shall be subject to random testing for prohibited substances for a minimum period of one (1) year but not more than five (5) years. (ECF #-1-1, PageID 45, CBA Article XVI, Section 3(e)).

-2-

The CBA also establishes that "[n]o amendment or revision of any of the terms or conditions contained herein shall be binding upon the parties hereto unless executed in writing by the parties hereto." (ECF #16-1, CBA, Article XXIX, Section 1, PageID 550).  "The waiver of any breach or condition of this Agreement by either party shall not constitute a precedent in the future enforcement of all the terms and conditions herein." (*Id.*, Section 2, PageID 550).  Further, the parties agreed that the CBA"totally integrate[s] all . . . terms, or conditions of employment existing between the parties, eliminating all past and existing practices unless otherwise stated." (*Id.,* Section 3, PageID 550).

In 2016, approximately four years before the most recent CBA went into effect, the Hospital introduced a drug testing program that required all caregivers, organization wide, to submit to random drug testing.  (ECF #15-1, PageID 207).   During the development and implementation of the policy, the Hospital communicated with the Union about the policy and provided notice to employees.  (*Id.* at PageID 208). The policy prohibits "impairment" which is defined as including,  "any detectable amount of an illegal drug, controlled substance and/or alcohol in an employee's system and may be asymptomatic yet result in a positive test."  (ECF #15-10, PageID #414).  Prior to Mr. Dobias' grievance, the Union had never filed a grievance, unfair labor practices charge, or any other challenge to the Hospital's drug testing policy.

Brandon Dobias ("the Grievant") had worked for the Hospital since 2018.  At the time of the arbitration, he was employed as a hospital porter.  (ECF #10-2, PageID 186).  As a hospital porter, Mr. Dobias has close contact with patients, doctors, nurses, visitors, and other medical personnel.  On April 7, 2023, Mr. Dobias' supervisor told him he must report for a random drug test.  (*Id.*).   There was no evidence that Mr. Dobias had exhibited any sign that he was

-3-

intoxicated, or that he was under the influence of alcohol, marijuana, or any drug or mind or mood altering substance. *(Id.)* The Arbitrator found that the hospital provided no evidence of "reasonable suspicion, reasonable cause nor probable cause" to test Mr. Dobias, as permitted under the CBA, Article XVI. *(Id.)* Rather, the parties and the Arbitrator all agree that he was randomly chosen for testing on that date. Nonetheless, Mr. Dobias complied and submitted a urinalysis. *(Id.)* He also admitted, at the time of testing, that he was a daily marijuana user.

The Arbitrator found that on the "non-federal drug testing form" there was a "'POSITIVE RESULT' for Marijuana Metabolite, but no result for Marijuana." *(Id*, at PageID 187). The Arbitrator acknowledged that marijuana metabolite is a byproduct of marijuana, but noted that there was no evidence presented that would indicate that marijuana metabolite is, itself, a prohibited substance, or that it causes impairment . (ECF #10-2, PageID 187). There was also no evidence submitted that would indicate that Marijuana Metabolite produces a "high" or any type of impairment or altered mental or emotional state which would be prohibited under the CBA's Substance Abuse Policy. *(Id.)*. There was no evidence in the record that would have indicated that Mr. Dobias possessed/consumed or was under the influence of any prohibited substance, as defined in the CBA, on Cleveland Clinic premises. (ECF #15).

When it obtained the results, the Hospital placed Mr. Dobias on a leave of absence and referred him for outpatient treatment. Upon completion of the outpatient program, Mr. Dobias returned to work and was issued a "corrective action," or "final written warning," which described his misconduct as "Possession/Consumption or being under the influence of alcohol on Cleveland Clinic premises." (ECF #15-17, PageID 480). The Union filed a grievance on April 27, 2023, challenging the use of random drug testing on bargaining unit employees, and

-4-

challenging Mr. Dobias' suspension as unjust.  (ECF #15-4, PageID #316).  Defendants

demanded arbitration on July 31, 2023.

## STANDARD OF REVIEW

A.  Summary Judgment

 Summary Judgment should be granted when there is "no genuine dispute at to any

material facts and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. 56(a).

The movant bears the original burden of demonstrating that the facts are not in dispute.  *Celotex*

*Corp. V. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has satisfied their burden, the

burden shifts to the non-moving party to "show that there is doubt as to the material facts and

that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarion v.*

*Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

B.  Review of Arbitration Agreements

 The Sixth Circuit has consistently set a clear standard for the review of arbitration

awards, and it is "one of the narrowest standards of review in all of American jurisprudence.

*Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council,* 184 F.3d 510, 514-505 (6th Cir.

1999)(quoting *Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990).

"Federal courts review arbitration decisions with a deferential gaze.  We ensure that the arbitrator

(1) did not commit fraud or dishonesty, (2) resolved a dispute fairly committed to arbitration, and

(3) at least arguably construed the collective bargaining agreement." *Econ Linen & Towel Serv. v.*

*Int'l Bhd. Of Teamsters Local Union* 637, 917 F.3d 512, 513 (6th Cir. 2019)(citing *Mich. Family*

*Res., Inc. v.  Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 752 (6th Cir. 2007).  The

"arguable-construction standard" protects decisions that are derived from the CBA unless the

"interpretation [is] "so untethered' from the terms of the contract that it conveys a lack of 'good-faith interpretation.'" *Zeon Chemicals, L.P. v. United Food & Commercial Workers, Local 72D*, 949 F.3d 980, 983 (6th Cir. 2020).

Federal courts may not overturn an arbitration decision due to errors in the interpretation of the collective bargaining agreement, even if such errors are deemed "serious," or result in inconsistent interpretations. *Id.* This level of deference applies to factual determinations, as well as legal interpretations. *See, Solvay Pharm., Inc. v. Duramed Pharm., Inc.*, 442 F.3d 471, 476 (6th Cir. 2006). "[I]f a court can find any line of argument that is legally plausible and supports the award then it must be confirmed." *Id.* "[T]he parties bargained for an arbitrator's interpretation of the contract, not a federal judge's interpretation." *Econ Linen & Towel*, at 513. Reviewing the merits of an arbitrator's decision, rather than merely policing "procedural aberrations," would undermine the federal policy of settling labor disputes by arbitration. *See, Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960); *Teamsters Local Union No. 436 v. The J.M. Smuckers Company*, 541 F. App'x 529, 533 (6th Cir. Sept. 5, 2013)(citing *Mich. Family Res.*, at 753). However, a court "may not enforce a collective bargaining agreement that is contrary to an 'explicit, well defined, and dominant' public policy that is 'ascertained by reference to the laws and legal precedents.'" *Equitable Res., Inc. v. United Steel, Local 8-512*, 621 F.3d 538, 551 (6th Cir. 2010)(quoting *E. Associated Coal Corp. v. United Mine Workers, Dist.* 17, 531 U.S. 57, 62-63 (2000)).

## DISCUSSION

A. Undisputed Facts

The relevant facts of this case are not in dispute. Mr. Dobias was subjected to random

-6-

drug testing and the Hospital does not dispute that they had no "reasonable suspicion" to test Mr. Dobias under Article XVI (Substance Abuse Prevention) of the CBA.  It is undisputed that marijuana is a prohibited substance under both the CBA and the Hospitals unilateral drug testing policy.  Both parties agree that Mr. Dobias' drug test came back as positive for marijuana metabolites, and that there were no other positive results.  Neither party submitted any evidence as to how marijuana metabolites correlate to marijuana use, such as how long metabolites stay in your system after use, or whether the presence of metabolites is indicative of recent or imminent marijuana impairment.

As a result of testing positive, Mr. Dobias was put on a leave of absence and directed to participated in an outpatient drug counseling program.  Upon his return to work he was issued a corrective action that provided a final written warning for misconduct described as "possession/consumption or being under the influence of alcohol on Cleveland Clinic premises."  There is no dispute that Mr. Dobias never possessed, consumed, or was under the influence of alcohol while on Cleveland Clinic premises.   There is also no evidence that Mr. Dobias actually possessed, consumed, or was under the influence of marijuana on Cleveland Clinic premises.  As the facts are not in dispute, summary judgment is an appropriate means of resolving the parties' dispute.

B.  Legal Analysis

An arbitration award should be upheld unless the Arbitrator (1) committed fraud or dishonesty, (2) resolved a dispute that was not fairly committed to arbitration, or (3) the award did not, at least arguably, construe the collective bargaining agreement.  An award may also be overturned if it violates an explicit, well-defined, and dominant public policy.  The parties agree

that this case was subject to arbitration, and they do not assert that the Arbitrator committed fraud.  Rather, the Hospital asserts that the Arbitrator found no "just cause" for discipline because the Hospital had not shown "on the job impairment" and because off-duty use of marijuana is no longer unlawful under the Adult Use Law.   It further argues that neither of these reasons is based on the terms of the CBA, and Arbitrator's supposed reliance on the legalization of marijuana violates public policy.  The Union argues that the arbitration award was supported by the Arbitrator's interpretation of the CBA, and that the award does not violate any explicit, well-defined, dominant public policy.

    1. <u>Public Policy</u>

Plaintiffs assert that the Arbitrator "found that the Hospital's discipline was barred by Ohio's new [] law which had decriminalized marijuana," and that basing a decision on this new law violates public policy.  (ECF #18-1, PageID595).  This is not a fair reading of the Arbitrator's opinion.  He did include this information in his recitation of the procedural history which was intertwined with his factual findings in the case.  The Arbitrator notes that on November 7, 2023, between the hearing date and the deadline for final briefs, "the citizens of Ohio voted to legalize possession of marijuana by means of a citizen initiated statute, dubbed the Adult Use Law, codified as Ohio Revised Code §3780."  He did not, however, reference or allude to any part of the statute as a basis for his decision, nor could he have.  The Adult Use Law has no relevance to the question at hand beyond establishing context. The relevant conduct in this case occurred before this statute was passed, and there is no provision for retroactive application of the statute.

Further, under the statute, employers retain the right to discipline, discharge, or

"otherwise take adverse action against an individual because of that individual's use, possession, or distribution of cannabis" even if that such use, possession, or distribution is otherwise legal under the Amendment.  O.R.C. §3780.35(A)(2), (3).  The Amendment does not preclude employers from prohibiting marijuana use among their workers; establishing and enforcing drug testing policies, drug-free workplace policies, or zero-tolerance drug policies that include marijuana as a prohibited substance; or finding just cause for disciplinary actions based on a violation of a drug use policy due to marijuana use.  Ohio Rev. Code §3780.35(A)(3),(B).  Just as employer policies banning the use of  alcohol, a legal substance, are valid, policies limiting or prohibiting the use of marijuana, which is now legal, are also still valid.

Plaintiff argues that the Arbitrator must have relied on the Adult Use Law because he "concluded: a) that the Ohio Adult Use Law permits off-duty drug use; and (b) that because Mr. Dobias's marijuana use had not caused demonstrable on-the-job impairment, the Hospital was not permitted to discipline him for his off-duty drug use."  This interpretation goes well beyond the words of the Arbitrator.  Further, even if it were correct, it would not lead the conclusion that the Arbitrator violated public policy.  At no point does the Arbitrator say anything about off-duty drug use, or an employers general right to control an employees off-duty use of legal (or illegal) substances.  The Hospital cites no provision in the CBA that it claims the Arbitrator has misinterpreted or ignored that would allow them to discipline an employee for off-duty drug use.

Plaintiff may be correct that the Arbitrator was making the point that off-duty use of marijuana is no longer illegal in Ohio.  This is a fact, but it is not the reason he gives for overturning Mr. Dobias' discipline.  Rather, the Arbitrator focuses on the lack of on-the-job impairment and the lack of any "trace" of marijuana in the drug testing, which tracks the

language in the Substance Abuse Prevention section of the CBA.  The CBA requires that "all employees report for and perform their duties free from any trace of drugs or alcohol."  The CBA makes no mention of a prohibition against the use of drugs (legal or illegal) or alcohol off-duty.  Because the CBA does not speak to off-duty substance use, the Arbitrator correctly focuses instead on Mr. Dobias' on-the-job behavior and  the validity of the drug test and results, which are the focus of the Substance Abuse Provisions within the CBA.

There is no indication in the Award that the Arbitrator based his decision on a misunderstanding or misapplication of the Adult Use Law, which would give rise to a violation of public policy.  Rather, the Arbitrator's decision is supported by the Hospital's failure to support the disciplinary action under the terms of the CBA.  It is most directly tied to a specific finding that "[t]he Hospital has not proven that Grievant was under the influence of marijuana while working at the hospital. . . [nor] that the Grievant possessed even a trace of marijuana while working at the Hospital."  (ECF #10-2, PageID188).  This finding aligns with the Substance Abuse Prevention provisions of the CBA, and provides a legally plausible rationale for overturning Mr. Dobias' disciplinary action based on violations of the CBA.

2. <u>No reasonable suspicion to test</u>

It is clear from the language in the written Award that the Arbitrator believed Mr. Dobias' random drug testing was not permitted under the terms of the CBA.  The Arbitrator also clearly implied  that the CBA criteria should have been followed.  Though he could have been more explicit in tying his findings and conclusions to specific provisions of the CBA, the Arbitrator spent a good portion of the Award tracking the language of the CBA testing requirements which provide that drug testing is permitted  "[s]hould the Hospital have reasonable cause to suspect

-10-

that an employee may have used a prohibited substance prior to reporting for work or while at work, or that an employee's performance or behavior may be affected by his use of one or more prohibited substances." (ECF #1-1, CBA, Art. XVI, Section 3).[1]  He was very thorough in explaining why the Hospital had no reasonable suspicion to test, finding that there was:  "no evidence of suspect behavior;" that "before the order was made to test the Grievant, there was no evidence submitted at the arbitration hearing nor stated in either brief, the that Grievant exhibited any evidence of intoxication, nor was there any evidence of any use of any drug;" and, that "[t]here was no odor, nor visible or audible evidence introduced that would support an allegation by the Employer that the Grievant was under the influence of alcohol, under the influence of marijuana, or under the influence of any drug or mind altering substance."  He also compared Mr. Dobias' behavior to a litany of circumstances and behaviors that could be associated with intoxication specifically finding that Mr. Dobias showed no signs of impairment whatsoever. (ECF #10-2, PageID 186).  The Arbitrator  concludes that "[t]here existed no reasonable suspicion, reasonable cause nor probable cause that Grievant was under the influence of marijuana, alcohol, or drugs, legal or illegal before Grievant took the test.  (*Id*).

There would be no need for any of this in depth discussion, or to make these specific findings of fact, if the Arbitrator did not believe that the CBA required reasonable suspicion before a drug test could be imposed.  Although he did not specifically spell out this conclusion, it is clear from the Award that he was applying the facts of this case to his reading of the CBA's

---

[1]
Random testing is not addressed in the CBA unless and until an employee has already had a positive drug test under the "reasonable suspicion" criteria.  (ECF #1-1, CBA, Art. XVI, Section 3(e)).

requirements.  "[A]rbitrators are generally not required to provide their substantive reasoning," as long as a reviewing court can "satisfy itself that the award is grounded in the [CBA]." *Advantage Veterans & Servs. Workers*, 70 F.4th 751, 756-757 (4th Cir. 2023).

In trying to argue that the Arbitrator did not follow the CBA, Plaintiff repeatedly references its unilateral policy on drug testing rather than the drug testing provisions within the CBA.  The Hospital's unilateral policy, which allows for random drug testing, took effect before the most recent CBA was implemented. Further, it, at least arguably, contradicts the CBA policy, which provides for drug testing when there is a reasonable suspicion that an employee has used a prohibited substances at or before reporting to work.  The CBA explictly purports to "eliminat[e] all past and existing practices unless otherwise stated."  (*Id.,* Section 3, PageID 550).  It is a fair interpretation of the CBA, therefore,  to find that the  Substance Abuse Prevention terms within the most recent CBA supercede any drug testing policy that the Hospital had previously imposed. The Arbitrator's apparent determination to apply the Substance Abuse Prevention terms within the CBA instead of the more expansive testing policies in the previously imposed policy, is itself an interpretation of the CBA and is entitled to full deference.

Further, even if the Arbitrator was wrong in applying the drug testing policy laid out in the CBA rather than the unilateral policy, his focus on the absence of  "reasonable suspicion" tracks the language of the CBA and fits within a reasonable interpretation of its requirements. The Court finds that the Arbitrator's finding that Mr. Dobias was tested randomly and without reasonable suspicion is a legally plausible grounds to overturn the Grievant's discipline under the essence of the CBA.  These findings and the ultimate Award are clearly tethered by the CBA's

reasonable suspicion standard for imposing drug testing.[2]  Therefore, under an "arguable-construction" standard, the Award must be upheld.  *See, Zeon Chemicals, L.P. v. United Food & Commercial Workers, Local 72D,* 949 F.3d 980, 983 (6th cir. 2020).

    3.  No just cause

In order to discipline and employee under the CBA, the Hospital must establish "just cause."  The term "just cause" is not defined, but rather left open to interpretation.  Interpretation of the contract, in turn, is entrusted to an arbitrator.  The Arbitration Award in this case provides two separate grounds for finding that the Hospital had no just cause to discipline Mr. Dobias.  The first is that there is absolutely no evidence, nor even allegation, that Mr. Dobias committed the infraction that is listed in his written notice of discipline.  The second is that, even if the Court were to allow the written notice to be amended at this late stage, there is insufficient evidence that Mr. Dobias engaged in prohibited behavior as defined by the CBA.

    a.  No evidence of alcohol use

The written notice of discipline issued by the Hospital in accordance with the requirements of the CBA, read as follows: "Miscondut: Possession/Consumption or being under the influence of alcohol on Cleveland Clinic premises."  (ECF #15-17 PageID 480; ECF #16–1 PageID 528)).  As the Award clearly states: "Neither at the Hearing, nor in the briefs, there was no evidence that Grievant consumed nor even possessed alcohol.  Nor is there any evidence that Grievant was under the influence of alcohol. . . There is no evidence at all that Grievant

---

[2]

  If the drug testing was impermissible, then the test results, and Mr. Dobias' admission that he "was a daily user of marijuana" would both be inadmissible grounds for discipline.

possessed/consumed or was "under the influence of alcohol on Cleveland Clinic premises.'"
(ECF #10-2, PageID 187). The Arbitrator found that this was a serious and false accusation.
(*Id.*)

Plaintiffs do not dispute that this charge is false. Rather, they contend that the notice
included a harmless clerical error. They further argue that a harmless error cannot provide a
rational basis for the Award. The error was not mentioned by the Hospital until they cited it in a
footnote in their post-hearing brief, arguing simply that Mr. Dobias knew that the infraction was
really for marijuana use and not for alcohol use. There is no indication in the record that this
error has ever been corrected.

The Arbitrator's holding that Mr. Dobias did not engage in the misconduct described in
his written disciplinary notice, even if wrong, was based on his interpretation of the CBA.
Plaintiff offers no law to support their contention that a harmless error in a notice of discipline is
irrelevant to a just cause determination. Defendants offer no law to the contrary. Either way, the
Arbitrator's findings suggest that he did not view the error as harmless. Even if his position is
legally incorrect or unsupported by the specific facts of the case, it is part of his interpretation of
the CBA, and it is his determination to make. *Mich. Family Res.*, 475 F.3d at 753. He found
that it was "serious" mistake, and that Plaintiffs made no timely effort to explain or otherwise
address it.(ECF #10-2, PageID 187). This Court has no authority to overturn this determination.
*See, United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

### b. No evidence of recent or current marijuana use

The Arbitrator also found that there is no evidence that Mr. Dobias failed to report for or
perform his duties free from any trace of drugs or alcohol. Specifically the Arbitrator found that

Mr. Dobias did not possess "even a trace of Marijuana while working at the hospital." He also found that Mr. Dobias did not test positive for marijuana, although he did test positive for marijuana metabolite, which is a byproduct of marijuana. The Hospital's internal policy for drug testing states that it will test for fourteen drugs and substances, including marijuana, but not including marijuana metabolite. There is no indication as to whether there is a separate test for marijuana, independent of the metabolite test.

The Hospital provided no evidence to explain how marijuana metabolite correlates to marijuana use. There is no evidence in the record of how long the metabolite stays in a person's system, or what type of exposure is required for the metabolite to appear. There was no evidence that a positive test for metabolite signifies current or recent impairment, or equates to a recent use (during the prohibited time frame) of marijuana. There is not even evidence that someone has to reach a level of actual impairment to produce these metabolites. There was also no evidence that marijuana metabolite has any effect on a person's mental, emotional, or physical state. Therefore, the Arbitrator found "that there is no evidence that the Grievant worked at the hospital under the influence of Marijuana, nor possessed Marijuana while on Hospital premises." (ECF #10-2, PageID188). This finding would overturn even a potentially amended version of the written notice of discipline which cited Mr. Dobias for misconduct based on "possession/consumption or being under the influence of [prohibited substance] on Cleveland Clinic premises." (ECF #15-17, PageID 480).

The Arbitrator found that there was insufficient evidence to prove that Mr. Dobias violated the substance abuse provisions of the CBA, or to provide just cause for discipline based on "possession/consumption or being under the influence of marijuana or alcohol on Cleveland

-15-

Clinic premises."  Plaintiff has pointed to no provision of the CBA that authorizes discipline for substance use off-duty so long as the employee is free from any trace of drugs or alcohol when on duty.  Plaintiff may argue that testing positive for marijuana metabolite constitutes having at least a "trace" of drugs on duty, however, they did not provide sufficient evidence to prove this point at the Arbitration hearing.   The Arbitration Award addresses an arbitrable issue.  There are no allegations of fraud or dishonesty, and the Award is grounded in the Arbitrator's construction of the CBA.  The Award offers multiple legally plausible rationale for overturning Mr. Dobias' disciplinary action based on violations of the CBA.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment to Vacate Arbitration Award is DENIED.  (ECF # 18) Defendant's Motion for Summary Judgment to confirm the arbitration award is GRANTED.  (ECF #17).  The Arbitration Award (ECF #10-2, PageID 189) is confirmed.  Plaintiff Lutheran Hospital shall comply with the terms of the Arbitration Award issued in Federal Mediation and Conciliation Service Case No. 230801-08098. IT IS SO ORDERED.

_____
JUDGE DONALD C. NUGENT

DATED: August 8, 2024

-16-